# HARBIN v. LEVI.

1. When an administrator declares, in a contract made with him in his representative character, *oyer* of his letters is not demandable.
2. To a similar action, *ne unques administrator*, is a bad plea, for the representative character is admitted by making the contract.
3. No offset can be made of a personal debt, due from the adminisrator against a contract made with him, which will be assets of the estate.
4. The purchaser of property at an administrator's sale, when he has received the property, cannot, *in an action for the purchase money*, require the plaintiff to prove the regularity of the sale, and is estopped from showing its illegality, so long as he retains the property purchased.
5. When an administrator has sold property of his intestate, and has not received the price, if he is afterwards removed from the administration, he can maintain no action against the purchaser. The right of action is gone with the administration, and passes to the new administrator.

WRIT of error to the County Court of Lowndes county.

Assumpsit by Levi against Harbin on the common counts. In the commencement of the declaration, the plaintiff describes himself as adminiatrator of the goods and chattels which were of Richardson Blake, deceased. The defendant craved *oyer* of the plaintiff's letters of administration, which was refused; and the court being applied to, refused either to non-suit the plaintiff, or compel him to give *oyer*.

The defendant then pleaded—

1. *Ne unques administrator*, which plea was overruled on demurrer.

2. That the supposed promises were made to the plaintiff as administrator of Richardson Blake; but since that time, and before the commencement of this suit, he had been removed from the administration, and one Samuel Gardner appointed, who then was, and now is, administrator.

This was also overruled on demurrer.

3. Non-assumpsit.

4. Payment.

5. Set-off.

6. Failure of consideration.

At the trial, the plaintiff proved that, in the month of July, 1840, he, as the administrator of R. Blake, offered three negroes, the property of the estate, at auction, at the courthouse door, on a credit of six months, and that the defendant bid them off for 968 dollars.

The defendant offered to introduce evidence of a debt due from the plaintiff to him, for money paid as his security, since the commencement of this suit; which evidence was rejected.

He also offered to read as evidence, the records of the orphans' court, showing that the plaintiff, before the commencement of this suit, had been removed from the administration of Blake's estate; and that one Gardner was then appointed, who now is the administrator on the same. This, also, was excluded.

The defendant then requested the court to instruct the jury, that the plaintiff ought not to recover, unless he proved that an order had been obtained for the sale of the slaves, and that the sale had been made pursuant thereto.

Also, that no title passed to the defendant under the said sale. These instructions were both refused; and the defendant excepted to the several matters ruled against him.

The errors assigned in this court, raise the following questions:

1. Whether the refusal of oyer was proper.

2. Whether the pleas overruled are good.

3. Whether evidence of the set-off was properly excluded.

4. Whether it was competent to the defendant to show, in bar of the action, that the plaintiff had been removed from his administration, and another administrator appointed.

5. Whether any recovery was proper, without showing the regularity of the sale at which defendant purchased.

BOLLING, for the plaintiff in error, cited, as to oyer, Clay's Digest, 609, sec. 7; Wyman v. Campbell, 6 Port. 245, as to the necessity to prove the regularity of the sale. Green v. Foley, 2 S. & P. 450; Turner v. Davis, 2 Saund. 139, as to the removal of the administrator.

COOK, contra, argued, that the words of description must be regarded as mere surplasage, and profert was unnecessary. [Minor 20; 3 Lomax's Ex. 371; Dane's Ab. tit. assumpsit, ch. 9, § 19; 5 Am. Com. Law, 331.] The removal did not affect his

Harbin v. Levi.

right to sue, as his successor could not sue on his contract; [Ross v. Sutton, 1 Bailey, 126;] nor could any defence be interposed by Levi of this description, without returning the slaves. [3 Porter, 127.]

GOLDTHWAITE, J.—1. When a contract is made with an administrator, with reference to the personal assets of his intestate, he is not compelled to sue as administrator for its breach, although he may do so if he will. [1 Chitty's Plead. 14; Lowell & Wife v. Watts, 6 East, 405.] As the person contracting with him has dealt with him in his representative character, there is no reason why it should be alleged in the pleadings; and if alleged, it will be considered as mere *descriptio personae.* In Caller v. Dade, [Minor 20,] it was held, where an administrator declared on a bond payable to himself, as administrator, no profert of letters was necessary, because the defendant had admitted his representative character by giving the bond. The same reason applies to every case of a contract made with an administrator as such.

The objection made with respect to the refusal to give *oyer*, when demanded, is not, therefore, available.

2. The same reasoning will apply to the plea of *ne unques administrator*, as that is nothing more than an attempt to revive the same question, which is concluded by contracting with the party as an administrator.

3. The next matter we shall consider is, the set-off attempted to be given in evidence. This was properly rejected, for two reasons: 1st, it occurred after the commencement of the suit; and 2d, because the assets of the estate could not thus be perverted to pay the personal debts of the administrator. In this State, the administrator is compelled, on many, perhaps most cases, to sell the personal property of his intestate on credit; and it cannot be supposed that his personal creditor ought to be permitted to absorb the assets, either in whole or in part, by off-setting *his* claim, when sued for a demand properly belonging to the unadministered assets.

4. When a purchase is made from an administrator, and the property is delivered under the sale, the necessary implication against the purchaser is, that every matter necessary to make the sale legal and operative, has been performed; and we cannot

suppose a case, where such a defence would be allowed to a purchaser retaining the thing purchased. It is the general, if not the universal rule, that one, in this condition, is estopped from denying his vendor's title. [Ogburn v. Ogburn, 3 Porter, 126; Cullum v. Branch Bank at Mobile, 4 Ala. Rep. N. S. 21.]

5. The question remaining to be considered, is that which arises upon the second plea of the defendant, and his offer, at the trial, to prove that Levi had been removed from his administration before the commencement of this suit. We shall consider the question as it arose at the trial. It will be borne in mind, that the evidence of the plaintiff had previously disclosed that the contract was made with him for the purchase of property belonging to his intestate's estate. The rights and duties of an administrator, under the earlier English statutes, are very different from what they are in this State. There, he was clothed with a discretionary power over the personal estate of his intestate, and when disposed of by him, either for money or on credit, the money or notes were absolutely his own. Here, however, the administrator is required by law to dispose of the assets on credit, and it is apprehended that, so long as they continue in a condition to be traced, and are not converted into money, they will pass as assets to any subsequent administrator. This, indeed, is the rule in England, when the property has not been changed. In Turner v. Davies, [2 Saund. 137,] an administrator had recovered a judgment in trover for the conversion of property of his inestate, but his letters were repealed before he had execution. On *audita querula*, by the defendant, it was held, that no execution could go on the judgment, for it was clear that the new administrator could recover it against the same defendant. The principle of that case governed the decision in King v. Green, [2 Stewart, 133,] where a bill single was given to two as the administrators of an estate, who were afterwards removed, and a subsequent administrator was allowed to recover on the bill, without making title through any assignment, but wholly upon the title deduced from his right as administrator. It may be that the report of that case is not sufficiently explicit in showing that the bill was given upon a consideration which made it assets in the hands of the subsequent administrator. Green v. Foley, [2 S. & P. 450,] is another case involving the same principle. There, three administrators, in Georgia, had recovered a

judgment against Green, two of whom were afterwards removed or resigned, and the third brought debt, in his own name, upon the record, setting out the facts with respect to the removal of the others. These cases seem to establish, very fully, that an administrator will not be permitted to control the assets of the estate, which he has not reduced to money, after his removal from office; and the two latter go further, and determine, that the subsequent administrator, of right, is entitled to sue, as administrator, for the recovery of such assets. Such would seem to be the necessary result, from the fact, that such contracts with administrators, are assets of the estate; but, in addition, we have a statute which leaves the matter free from all doubt. It provides that any suit, commenced on behalf of, or against any personal representative of any testator or intestate, may be prosecuted by any one who may succeed to the administration; and, further, that when any personal representative, or guardian, shall be displaced, all moneys due to him or her, in that right, by execution or otherwise, shall be paid to his or her successor. [Clay's Digest, 227 § 30.]

We think it is clear that, immediately on the removal of Levi from the administration, his right over any of the assets of the estate ceased, and that it made no difference whether these assets existed in the shape of debts due to the intestate, or due by contract to the administrator. Beyond this, it also seems clear, that the new administrator would be entitled to recover the assets, partially reduced by Levi, in the same manner as Levi himself could have done, if he had not been removed.

The consequence of this reasoning is, that the court erred in refusing to allow the evidence, offered to show Levi's removal from the administration before suit brought. The same conclusion would apply, also, to the plea, but we have not examined its form, and, therefore, give no opinion on it.

Judgment reversed, and, if desired, it will be remanded.